(Decided June 23rd, 1897).

---

WM. PENN RAUTH *vs.* CHARLES O. WARD, REGISTER, ET AL.

*Elections and Voters—Residence—Registration—Removal of Voter from One Ward of a City to Another.*

The charter of Hagerstown provides that male citizens who shall have resided in the city for 12 months and in the ward for 6 months preceding an election shall be entitled to register, and that in case a voter duly registered shall remove to another ward in the city he shall be entitled to vote in the ward from which he removed until he shall have resided in the other ward a sufficient time to entitle him to be registered there. *Held,* that a voter has no right to have his name kept upon the registration books of the ward from which he removes until he is actually registered elsewhere, but that so soon as he has resided long enough in the ward to which he removes to be entitled to registration there, his right to vote in the ward from which he removed is gone, whether he becomes actually registered in the new ward or not. In such case it makes no difference that the voter was absent from the city at the time of the sitting of the registers, and his name may be stricken from the registry list of the ward from which he removed.

Appeal from an order of the Circuit Court for Washington County (STAKE, J.), dismissing appellant's petition.

The cause was submitted to the Full Bench on briefs by *Henry H. Keedy, Jr., Lewis D. Syester* and *Wm. J. Witzenbacher* for the appellant and *A. C. Strite* for the appellees.

McSHERRY, C. J., delivered the opinion of the Court.

We think the Court below was right in its ruling in this case. The sole question involved is whether one John P.

Downin was entitled to vote at the municipal election held in Hagerstown on the fourth Monday of March, 1897 ; and its solution depends altogether upon whether he possessed the requisite legal residence in the ward in which it is insisted he had the right to vote. By the charter of the city as amended by the Act of 1892, ch. 36, the qualifications of voters are prescribed. There are several provisions relative thereto which must be briefly stated. Sec. 156 B declares that the male citizens of Hagerstown of the age of twenty-one years and upwards, who shall be duly registered and who have resided in the State of Maryland and in the said town for twelve months and in the ward six months preceding an election shall be entitled to register, " provided always that where any person shall be legally registered in any of said wards, and shall remove therefrom to any other of said wards, and remain therein, he shall be entitled to have his name remain on the registry list of the ward from which he shall remove as aforesaid, and to vote therein until he shall reside in the ward to which he shall have removed and remain therein a sufficient time to entitle him to register therein." Sec. 159 enacts that the qualifications of the voters for Councilmen shall be the same as for Mayor, " provided the voters shall have resided for six months next preceding the election in the ward in which he offers to vote." The same section then proceeds " and in case of removal or until such residence is acquired, the voter must vote in the ward from which he has removed, and in which he is a qualified elector." And sec. 159 K requires that the voter shall be " a resident of Hagerstown one year and of the ward in which he may offer to vote for six months next preceding the election."

It is quite clear that primarily there must be a residence of twelve months in the town and of six months in the ward to entitle a party to register and vote ; and there are super-added provisos designed to meet the contingency of a removal from one ward to another in the interim between registrations. These provisos do no more than preserve

the right to vote in the ward where the voter has been legally registered if he should remove therefrom into another ward less than six months prior to a municipal election. It was designed that such a removal should not defeat the right to vote in the ward from which the voter had removed until by a sufficiently long residence in the ward *to* which he removed he had gained the right to register and vote therein. But it does not seem to us that these provisions allow the voter's name to remain either indefinitely upon the registration books of a ward *from* which he has removed, or to remain there after he has been absent from the ward long enough to acquire the necessary residence in some other ward. ˙ Whilst the predominant object of all registration laws is to secure and not to defeat the right of suffrage, a no less important purpose to be subserved by them is to guarantee fair and honest elections by lessening the opportunities for fraudulent and illegal voting. The provision requiring a residence in a ward for a definite period was obviously devised to prevent impositions by persons having no fixed abode ; and though the mere fact of a removal from one ward to another is not enough to disqualify unless the absence consequent upon the removal has been of sufficient duration to enable the voter to acquire the requisite residence elsewhere before another election occurs ; there is no provision which permits the name of a voter who has removed from a ward to continue upon the registration books of that ward until he has actually registered elsewhere. All the sections taken together obviously contemplate that the right to vote in a particular ward shall depend upon one of two conditions—provided, of course, the voter possesses the other necessary qualifications. These two conditions are, first, that the voter is and has been for six months a resident of the ward ; and, secondly, that having been a resident of the ward for six months and having registered, he has subsequently removed therefrom to another ward and has not resided *there* long enough to acquire a right to vote therein ; or stating the same thing another

way, that he has not resided therein long enough to lose his residence in the ward from which he removed. If he has actually remained long enough in the ward to which he removed to gain a residence there, his right to vote in the ward whence he removed and where he *was* registered is gone whether he registers in the other ward or not.

Now, the facts before us as disclosed by the record are these : Downin had been a resident of the third ward for upwards of seventeen years and prior to November the first, 1895, he was duly registered therein. On the date just named he removed with his family to the second ward. When the March election of 1896 came on, not having resided for six months, between November the first, 1895, and the day of election, in the second ward, he voted in the third ward as he was entitled to do. On the first of November, 1896, after having lived for one year in the second ward he went to Philadelphia, but his family moved back to the same house he had before occupied in the third ward. He remained in Philadelphia for about five months, or nearly up to the time of the election in March, 1897, though he had no intention of permanently leaving Hagerstown. Upon this state of facts the officer of registration for the third ward, after sending a notice to Downin, struck his name from the list of qualified voters on the first Monday of March last. Downin made no application to be reinstated and an appeal to the Circuit Court from the registration officer was taken by Rauth, who has also brought the record into this Court by an appeal from the Circuit Court for Washington County.

Clearly Downin lost his residence in the third ward by living for a whole year in the second ward. By living for a year in the second ward he gained a right to register there and the moment he gained that right he ceased to retain the right to vote in the third ward. The mere fact that no opportunity to register was afforded him after he became a legal resident of the second ward and before he went to Philadelphia did not prolong his right to vote in the third

ward or make him any the less a resident of the second ward. The place—the ward—where he was entitled to vote was determined by his residence, and the fact that he was unable by reason of there being no sitting of the registration officers, to register in the second ward after acquiring a residence there did not permit him to vote in the ward where he had ceased to have a legal residence. Having lost his residence in the third ward by moving into and remaining in the second ward a year; and not having regained a six months' residence in the third ward after his return to his original home on November the first, 1896, he was in the precise situation that a person who had never resided for six months in any ward would have been. The question of his right to register and to vote in the second ward is not now involved; but the naked and bald claim is that he had a right to vote in the third ward, though his former legal residence therein had been abandoned and had absolutely ceased to exist, and though he had confessedly not acquired by a new residence of six months a right to vote in that ward.

It appears to us quite obvious that he had no legal claim to remain on the list of qualified voters of the third ward and that consequently the officer of registration was right in striking his name off. We accordingly affirm the ruling appealed from.

*Ruling affirmed with costs above*
*and below.*

(Decided June 23rd, 1897).